## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Charles R. Morrison, *et al.*,

        Plaintiffs,

                                      Case No. C-2-06-644

-V-                                  JUDGE SMITH
                                        Magistrate Judge Kemp

Michael F. Colley, *et al.*,

        Defendants.

### OPINION AND ORDER

Plaintiffs Charles R. Morrison, Donald E. Eckhart, and Alexander Smith (hereinafter "Plaintiffs") have filed a Motion for Preliminary and Permanent Injunction against Defendants Michael F. Colley, William A. Anthony, Carolyn C. Petree, Kimberly E. Marinello, and the Franklin County Board of Elections (collectively "FCBOE") seeking to enjoin Defendants from enforcing Ohio's election statute against Plaintiff Morrison and to certify him as a candidate for the November 2006 election for the office of United States Representative for the 15th Congressional District in Ohio. For the reasons that follow, the Court denies Plaintiffs' Motion for Preliminary and Permanent Injunction.

### I.    BACKGROUND

Plaintiff Charles R. Morrison ("Morrison") is an individual citizen of Ohio. Plaintiffs Donald Eckhart and Alexander Smith are individual citizens and qualified electors who reside in Franklin County, Ohio. Mr. Morrison has been a member of the Republican party for many years. He has been involved in various Republican clubs and other Republican-oriented activities over the years. In addition, Mr. Morrison unsuccessfully sought the Republican nomination to Congress in

2000, 2002, and 2004.  Morrison admits that he was a Republican and that others most likely considered him a Republican as well.

On or about December 14, 2005, Mr. Morrison began circulating petitions seeking election to the governing board of the local Republican party, the Madison County Republican Party Central Committee.  On or about February 7, 2006, Mr. Morrison began circulating petitions seeking election to the governing board of the state party, the Republican Party State Central Committee. In both of these petitions, Morrison stated that he was a member of the Republican party. Specifically, the petitions read: "I, Charles Morrison, declare under penalty of election falsification that I am a qualified elector of the State of Ohio and reside at the address appearing below my signature; that I am a member of the Republican Party... ."  Both the state and local central committee petitions were filed on February 17, 2006.  Morrison was ultimately certified as a candidate for both these positions and appeared on the May 2, 2006 Republican primary ballot as a candidate for office.

At essentially the same time Morrison was circulating petitions for the state and local Republican Party Central Committees, he was also circulating petitions to run as an independent for Representative for the 15th Congressional District.  In fact, Morrison answered in the affirmative when asked, "So you were asking people to sign, representing yourself as a Republican and as an Independent at the same time?"  (FCBOE hearing tr. at 43).  Around the same time, Morrison was also advertising, campaigning and holding himself out to the public as a Republican.  (FCBOE hearing tr. at 43).

While testifying before the FCBOE, Morrison described his procedure in circulating the petition to be an Independent candidate for Congress.  Morrison collected approximately 2,316

signatures, 2,000 of which, he collected himself.  In collecting these signatures, Morrison "walked up to each one of them, stuck out my hand, shook their hand, and in the processed [sic] say, 'Hi, I'm Charlie Morrison.  I'm running as an Independent for Congress.  I need about 2,000 signatures to get my name on the ballot, and I wonder if you could help me out and sign my petition.'"  (FCBOE hearing tr. at 39).

In addition to holding himself out to the public as a Republican, Morrison also established a campaign committee, "Charlie Morrison for Congress."  To do this, he had to complete Federal Election Committee Form 1, statement of organization, which included designating a party affiliation.  Morrison's campaign committee is designated Republican and he has not changed this, however, he did say he would change it once he became a candidate.  (FCBOE hearing tr. at 45-46).  Mr. Morrison has solicited contributions for this lawsuit and is taking those funds in through that committee.  (FCBOE hearing tr. at 46).

On May 1, 2006, the day before the primary election, Mr. Morrison filed a Statement of Candidacy and Nominating Petition[1] (the "Petition") with the Franklin County Board of Elections to run as an independent candidate for Representative to Congress for the 15th Congressional District.  The Petition contained the requisite number of signatures of qualified electors and contained a declaration signed by Morrison that he is a qualified elector and he desires to be a candidate for election to the office of Representative.  Then, on May 2, 2006, Mr. Morrison appeared at his local voting location and requested, received, and voted a Republican party ballot.

---

[1] The specific form of the Petition was specifically prescribed and mandated by the Ohio Secretary of State (Form 3-B).

Mr. Morrison was unsuccessful in securing a nomination for either the local or state Republican party central committee positions. His political ambitions, however, were still alive because he also submitted the petition to run as a independent candidate for Representative for the 15th Congressional District.

After a petition is submitted to the FCBOE, it is the practice of the Board to verify the signatures on the petition for sufficiency and also to verify that the form of the petition is valid.[2] It is not, however, the practice of the FCBOE to check the voting history of the candidate. The FCBOE essentially relies on the honesty of the candidates that they satisfy the requirements for the office they are seeking and that they have truthfully completed the declaration of candidacy. However, there is a check on this policy, allowing for protests to be filed challenging the qualifications of the candidate.

The FCBOE determined that Mr. Morrison's petition contained a sufficient number of signatures and was otherwise valid. On May 22, 2006, the Board was scheduled to meet to consider Mr. Morrison's candidacy. However, that same day, three qualified electors from the 15th Congressional District filed a written protest challenging Mr. Morrison's candidacy pursuant to Ohio Revised Code Section 3501.39. The protestors were the chairmen of the Republican Party of each of the counties that comprise the 15th Congressional District. The protestors argue that Morrison was not an independent candidate as defined in Ohio Revised Code section 3501.01(I), which provides:

> an "independent candidate is any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a

---

[2] Interestingly, during this process of investigating the circulators and signers of the potential candidate's petition, the FCBOE determines which political party the signer and the circulator are a member of based solely on their voting history. Morrison was both a circulator and signer of all of the petitions.

general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 of the Revised Code.

On June 21, 2006, the FCBOE held a hearing on the protest regarding Mr. Morrison's candidacy. Each side was given the opportunity to present evidence, including live testimony, as well as present written and oral arguments. The protestors argued that because Morrison appeared on the ballot as a candidate for local and state Republican central committee prior to and on May 2, 2006, and based on his voting as a Republican in the past, including May 2, 2006, which occurred after submitting his petition as an independent, that he is not an independent candidate.

Mr. Morrison, however, argued at the hearing that the definition of independent candidate is not a substantive requirement that must be satisfied before a candidate may be certified to the ballot, but is merely a description of a candidate who satisfied the petition requirement set forth in the statute. In the alternative, Morrison argued that even if the first part of the definition is a substantive requirement, he satisfied it in his sworn statement at the hearing that he is "not affiliated with a political party."

At the conclusion of the hearing, the FCBOE tied 2-2 on whether to certify Mr. Morrison to the ballot. Then, pursuant to Ohio law, the Motion to certify Morrison to the ballot was submitted to the Secretary of State to break the tie. As part of the tie-breaking process, the two members of the Board who voted for certifying Morrison to the ballot submitted a letter explaining their reasoning to the Secretary of State and the other two members who voted against certification also submitted a letter. In a letter to the FCBOE dated July 14, 2006, Assistant Secretary of State Monty Lobb broke the tie, voting against certification. The letter set forth the Secretary's interpretation and construction of the Statute and his rationale for voting against certifying Morrison to the ballot. Based upon the rulings by the Board and the Secretary of State, Morrison was not certified as an

independent candidate for Representative to Congress for the 15th Congressional District.

Morrison had therefore run out of traditional options to have his name on the ballot, so he initiated this suit seeking to enjoin Defendants from enforcing Ohio's election statue against Plaintiff Morrison and to certify him as a candidate for the November 2006 election for the office of United States Representative for the 15th Congressional District in Ohio.

Plaintiffs assert that Ohio Revised Code Section 3513.257, which sets forth the requirements for a person desiring to become an independent candidate, is unconstitutionally vague, in violation of Plaintiffs' due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and also that it burdens Plaintiffs' rights to the freedom of speech and association, and to the equal protection of the laws, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

## II.    STANDARD OF REVIEW

The Court must consider four factors in determining whether to issue a preliminary injunction and/or permanent injunction:

> (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).  The factors are not prerequisites; rather, they must be balanced.  *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004).

## III.    DISCUSSION

A.      **Likelihood of success on the merits**

Plaintiffs bring their claim under 42 U.S.C. § 1983, arguing that Ohio Revised Code Section 3513.257 violates Plaintiffs' First and Fourteenth Amendment rights to freedom of speech and association, due process and the equal protection of the laws.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).

1.      **Vagueness**

Plaintiffs claim that O.R.C. § 3513.257 is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment.[3]  Plaintiffs maintain that the statute is unconstitutionally vague because:  (1) it fails to specify what a person desiring to become an independent candidate must do to be certified to the ballot; and (2) because it lacks objective standards for enforcement. Pls' Mot. at 26.  This Court disagrees.

The Supreme Court, in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), enunciated

---

[3] For reasons this Court cannot discern, both parties, at times, incorrectly refer to the O.R.C. § 3501.01(I), the provision defining 'independent candidate,' as the challenged statute.  Plaintiffs, however, have challenged the constitutionality of O.R.C. § 3513.257, the provision setting forth the requirements for an individual who seeks to become an independent candidate.  (Am. Compl. at p. 1).

7

standards for evaluating a vagueness claim: "[f]irst . . . we insist that the laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . [s]econd, laws must provide explicit standards for those who apply them." *Id.* at 109.  The Supreme Court, in *Hynes v. Mayor of Oradell*, 425 U.S. 610, 621-22 (1976), added the requirement that the applicable coverage of the statute must be clear.

The degree of vagueness that the Constitution tolerates "depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  In deciding void-for-vagueness challenges, the courts have created a sliding scale to determine the applicable degree of scrutiny.  The Supreme court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99 (footnote omitted).  For example, economic legislation "is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* at 498 (footnotes omitted).

The Sixth Circuit, in *Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980), in considering whether a ballot access statute was void for vagueness, articulated the applicable degree of scrutiny for ballot access statutes: "although the right of a candidate to ballot access may not necessarily be entitled to the rigorous standard of review given disenfranchisement cases, restrictions on that access must be justified by important state interests at a minimum." *Id.* at 811 (internal citations omitted).  The *Kay* Court, in determining the appropriate standard, recognized the tension election regulation creates between state interests and individual rights.

Additionally, "[w]hen the constitutionality of a statute is challenged, it is the court's

obligation in determining the validity not to destroy but to construe it, if possible, consistently with the will of the legislature, so as to comport with the constitutional limitations." *Id.* at 812, *citing United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 571 (1973).

In keeping with this analytical framework, the Court turns to the text of the O.R.C. § 3513.257 to determine whether or not it can be construed[4] so as to comport with constitutional limitations. Ohio Revised Code Section 3513.257, titled "Statements of candidacy and nominating petitions for independent candidates," provides in relevant part:

> Each person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election,... shall file no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters, a statement of candidacy and nominating petition as provided in section 3513.261 [3513.26.1] of the Revised Code....

> The statement of candidacy and separate petition papers of each candidate or pair of joint candidates shall be filed at the same time as one instrument.

> The nominating petition shall contain signatures of qualified electors in the district, political subdivision, or portion of a political subdivision in which the candidacy is to be voted on in an amount to be determined as follows:

> (C) If the candidacy is to be voted on by the electors in any district, political subdivision, or part thereof in which five thousand or more electors voted for the office of governor at the next preceding election for that office, the nominating petition shall contain a number of signatures equal to at least one percent of those electors.

---

[4] Plaintiffs, in a footnote, argue that this Court is not entitled construe a state statute. *See* Pls' Reply, p. 3.  While the Court acknowledges that the construction of a challenged state statute is "generally a matter best left to the states, there are instances in which federal courts may properly consider challenges to them.  Abstention is not appropriate when it is not practicable to wait the necessary length of time to get a definitive state adjudication . . . ." *Kay*, 621 F.2d at 812.

\*\*\*

Nominating petitions of candidates for offices to be voted on by electors within a district or political subdivision comprised of more than one county but less than all counties of the state shall be filed with the boards of elections of that county or part of a county within the district or political subdivision which had a population greater than that of any other county or part of a county within the district or political subdivision according to the last federal decennial census.

\*\*\*

No petition other than the petition of a candidate whose candidacy is to be considered by electors throughout the entire state shall be accepted for filing if it appears on its face to contain more than three times the minimum required number of signatures.  A board of elections shall not accept for filing a nominating petition of a person seeking to become a candidate if that person, for the same election, has already filed a declaration of candidacy, a declaration of intent to be a write-in candidate, or a nominating petition, or has become a candidate by the filing of a vacancy under section 3513.30 of the Revised Code for any federal, state, or county office, if the nominating petition is for a state or county office, or for any municipal or township office, for member of a city, local, or exempted village board of education, or for member of a governing board of an education service center, if the nominating petition is for a municipal or township office, or for a member of a city, local, or exempted village board of education, or for member of a governing board of an education service center.  When a petition of a candidate has been accepted for filing by a board of election, the petition shall not be deemed invalid if, upon verification of signatures contained in the petition, the board of elections finds the number of signatures accepted exceeds three times the minimum number of signatures required.  A board of elections may discontinue verifying signatures when the number of verified signatures on a petition equals the minimum required number of qualified signatures.

Any nonjudicial candidate who files a nominating petition may request, at the time of filing, that the candidate be designated on the ballot as a nonparty candidate or as an other-party candidate, or may request that the candidate's name be placed on the ballot without any designation.  Any such candidate who fails to request a designation either as a nonparty candidate or as an other-party candidate shall have the candidate's name placed on the ballot without any designation.

The purpose of establishing a filing deadline for independent candidates prior to the primary election immediately preceding the general election at which the candidacy is to be voted on by the voters is to recognize that the state has a substantial and compelling interest in protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education, thus fostering informed and educated expressions of the popular will

in a general election.  The filing deadline for independent candidates required in this section prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot.  The deadline, one day prior to the primary election, is the least drastic or restrictive means of protecting these state interests.  The general assembly finds that the filing deadline for independent candidates in primary elections required in this section is reasonably related to the state's purpose of ensuring fair and honest elections while leaving unimpaired the political, voting, and associational rights secured by the first and fourteenth amendments to the United States Constitution.

Ohio Revised Code section 3501.01(I) sets forth the definition of "Independent candidate"

as:

"Independent candidate" means any candidate who claims not to be affiliated with a political party, and whose name has been certified on the office-type ballot at a general or special election through the filing of a statement of candidacy and nominating petition, as prescribed in section 3513.257 [3513.257] of the Revised Code.

Plaintiffs claim that O.R.C. § 3513.257, both on its face and as construed by Defendants, fails under the *Grayned* and *Hynes* criteria because the statute "requires guesswork by aspiring candidates and the exercise of subjective judgment by election officials." Pls' Mot. at p. 31.  The scope of Plaintiffs' void for vagueness challenge to O.R.C. § 3513.257 is not as broad as it may seem at first blush.  Plaintiffs acknowledge that they "are not challenging the State's authority to impose a filing deadline for independent candidates that is prior to the primary election." Pls' Mot. at p. 23.  Likewise, Plaintiffs do not challenge the nominating petition signature requirements contained in O.R.C. § 3515.257.  Further, Plaintiffs do not dispute that the purposes articulated by the statute serve substantial and compelling interests.  *Id.*  Finally, Plaintiffs do not challenge *Storer v. Brown*, 415 U.S. 724 (1974), in which the Supreme Court sustained the constitutionality of a ballot access statute requiring at least 12 months of political disaffiliation for an individual desiring to be an independent candidate.

11

Instead, Plaintiffs argue O.R.C. § 3515.257 (both on its face and as construed) creates confusion as to whether or not O.R.C. § 3501.01(I) operates as a substantive requirement, and, if so, whether a person desiring to become an independent candidate can merely claim not to be affiliated with a political party or whether they must truly be unaffiliated with a political party. *Id.* at 31-32. Additionally, Plaintiffs contend the statute requires additional guesswork because it fails to specify what an aspiring candidate must do to claim independence, when this claim must be made, where it must be made and to whom it must be made.  *Id.* at 33-37.  Finally, Plaintiffs argue the O.R.C. § 3513.257's failure to specify the "who, what, when, where and how" invites discriminatory enforcement by election officials. *Id.* at 38.

The Court first addresses Plaintiffs assertion that O.R.C. § 3513.257 creates confusion as to whether or not O.R.C. § 3501.01(I) operates as a substantive requirement.  Ohio precedent on the construction of statutes provides: "[i]f the legislature defines terms that are to be applied to the subject matter of the legislation, that definition controls the application of the statute."  *Dublin School Dist. Bd. of Educ. v. Limbach*, 69 Ohio St. 3d 255, 258 (1994).  Further, the Ohio Supreme Court has observed:

> [i]n the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used.

*Weaver v. Edwin Shaw Hosp.*, 104 Ohio St. 3d 390 (2004).  In ascertaining legislative intent, it is often helpful to review the circumstances surrounding the introduction or amendment of a statute. The Court finds that reviewing the circumstances surrounding the addition of O.R.C. §3501.01(I) makes clear the General Assembly's purpose in enacting the provision.

12

In 1980, the Ohio Court of Appeals for the Tenth District, in *State ex rel Moss v. Franklin Cty. Bd. of Elections*, 69 Ohio App. 2d 115, considered whether Moss was precluded from being an independent candidate for state representative by virtue of O.R.C. § 3513.04, because he was also seeking a position with the central committee.  The appellate court admitted that "the term 'independent' was inconsistent with the status of party affiliation."  *Id.* at 120-21, *citing State ex rel Begelow v. Butterfield*, 132 Ohio St. 5 (1936).  The court continued to observe:

> There is a strong suggestion that a loser in a party primary is not an independent in terms of political philosophy; party allegiance was demonstrated by candidacy in the primary election.  The independent candidacy in the general election of a defeated party primary candidate is suggestive of intraparty feuding.

*Id.* at 12, *quoting Foster v. Bd of Elections*, 53 Ohio App.2d 213, 232 (1977).

The *Moss* court, despite its recognition of the commonsense meaning of 'independent,' concluded:  "[w]hile this may be inconsistent with the general philosophy of being 'independent,' there is no statutory prohibition."  *Id.* at 121.  The appellate court explained that "under Ohio law, any person, regardless of his political affiliation, may become an independent candidate for election to office . . . ."  *Id.* at 122.[5]

Congress reacted to *Moss* in House Bill 235, the next amendment after the *Moss* decision was released, by adding the definition of 'independent candidate.'  The amendment became O.R.C. § 3501.01(I) and provides in part: "'Independent candidate' means any candidate who claims not

---

[5] During the course of the FCBOE proceeding, Morrison frequently referred to the *Moss* decision for support.  This Court refrains from commenting on whether or not the *Moss* court reached the correct conclusion in rejecting the commonsense interpretation of 'independent.'  However, in light of the reaction of the General Assembly to amend the statute to add the definition of 'independent candidate,' this Court finds that the significance of the *Moss* opinion is limited to its provision of insight into the legislative intent for the adoption of O.R.C. § 3501.01(I).

to be affiliated with a political party . . . ."  Based upon the foregoing, it is clear the that the legislature's purpose in adding O.R.C. § 3501.01(I), was to remedy the *Moss* court's abandonment of the commonsense interpretation.  Thus, O.R.C. § 3501.01(I) does not necessarily add a substantive requirement, but instead evidences the legislature's intent that O.R.C. § 3513.257 be construed according to its commonsense meaning.  That is, that an independent candidate must not be politically affiliated.

This Court's interpretation is corroborated through examination of O.R.C. § 3513.257's articulation of the interests the legislature sought to protect, embodied in the final paragraph of the statute.[6]  The statute specifically identifies the following substantial and compelling interests:

> protecting [the state's] electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education, thus fostering informed and educated expressions of the popular will in a general election . . . [prevention of] splintered parties and unrestrained factionalism, [avoidance of] political fragmentation, and [maintenance of] the integrity of the ballot . . . ensuring fair and honest elections . . . .

In *Storer v. Brown*, 415 U.S. 724 (1974), the Supreme Court acknowledged the link between a disaffiliation requirement and furtherance of the interests articulated in O.R.C. § 3513.257:

> [t]he requirement that the independent candidate not have been affiliated with a political party for a year before the primary is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot . . . [the disaffiliation requirement] protects the direct primary process by refusing to recognize independent candidates . . . splintered parties and unrestrained factionalism may do significant damage to the fabric of government . . . [i]t appears obvious to us that the one-year disaffiliation provision further the State's interest in the stability of its political system.

*Id*. at 733-736.  Likewise, the Ohio Supreme Court has stated:

---

[6] Notably, like the definition of 'independent candidate' in O.R.C. § 3501.01(I), the purpose language in O.R.C. § 3513.257 was added post-*Moss*.

> Some of the important state interests that have been recognized to uphold the constitutionality of various elections provisions are (1) having orderly, fair and honest elections instead of chaos, (2) maintaining the integrity of the political process by preventing interparty raids and intraparty feuds, (3) maintaining the integrity of various routes to the ballot, (4) avoiding voter confusion, ballot overcrowding, or frivolous candidacies, (5) ensuring that elections are operated equitable and efficiently, (6) preventing candidacies that are prompted by short-range political goals, pique, or personal quarrel, and (7) preventing parties from fielding an independent candidate to capture and bleed off votes in a general election that might otherwise go to another party.

*State ex rel. Purdy v. Clermont Cty. Bd of Elections*, 77 Ohio St.3d 338, 344 (1997)(internal citations omitted). Based upon the foregoing analysis, and considering the whole legislative scheme surrounding the challenged statute, this Court does not hesitate in concluding that O.R.C. § 3513.257 and O.R.C. § 3501.01(I), requires an independent candidate to be politically unaffiliated.

Plaintiffs next argument is that the legislature's use of the word "claim" in O.R.C §3501.01(I) is confusing and fails to put an aspiring independent candidate on notice that they "must actually *be* independent, rather than merely *claim* it . . . ." (Emphasis in original); Pls' Mot. at p. 31-32, 35. While the Court acknowledges that this statute, like most statutes, could be more precise,[7] the fact that a statute could have been worded better does not render it unconstitutional. As the Supreme Court recognized in *Grayned*,

> Condemned to the use of words, we can never expect mathematical certainty from our language. It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) legal terms will be in nice question.'

408 U.S. at 110, FN 15. Because statutory interpretation is a holistic endeavor, the words of a

---

[7] For example, O.R.C. § 3501.01(I) would be more precise if the legislature had added language such as: "and this must not be a misrepresentation" after "who claims not to be affiliated with a political party".

statute cannot be read in isolation. *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988). The touchstone inquiry is not meticulous specificity, but rather whether "the laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Id.* at 109.

In the instant case, the Court finds that a person of ordinary intelligence, when considering O.R.C. § 3513.257 and O.R.C. § 3501.01(I) in the whole legislative scheme, would understand that an aspiring independent candidate "must actually be independent, rather than merely claim it." That is, that an independent candidate must be truly independent. This is the commonsense, logical interpretation. *See Roschen v. Ward*, 279 U.S. 337, 339 (1929) ("[T]here is no canon against using commonsense in construing laws as saying what they obviously mean."). Additionally, this interpretation furthers the express purposes of O.R.C. §3513.257 (*see* discussion *supra*), while to find otherwise would undermine them. *See Kay*, 621 F.2d at 812 (In examining a void for vagueness challenge to a ballot access provision, the Sixth Circuit noted that it had an obligation to "construe [the statute], if possible, consistently with the will of the legislature."); *see also Grayned*, 408 U.S. at 110-11 (In reviewing a city ordinance pursuant to a void for vagueness challenge, the Supreme Court examined "the ordinance as a whole" and looked also to the purpose articulated in its preamble for guidance.).

The Court addresses Plaintiffs' final two arguments – (1) that O.R.C. §3513.257 requires additional guesswork for failure to specify the what and when of claiming independence (Pls' Mot. at p. 33-37); and (2) this failure invites discriminatory enforcement by election officials (*Id.* at 38) – together since they are related.

With respect to the 'when' and 'what,' O.R.C. § 3513.257 requires an individual desiring to become an independent candidate to file a statement of candidacy and a nominating petition "no later than four p.m. of the day before the day of the primary election . . . . "  Plaintiffs admit in their Motion for Preliminary and Permanent Injunction that these actions are akin to "claiming they are an independent."  Pls' Mot. at 46.  As discussed *supra*, based upon commonsense, and in keeping with the expressed intent and purposes of the legislature, this claim must not be false.  Thus, an individual desiring to become an independent candidate, should be free of political affiliations by "no later than four p.m. of the day before the day of the primary election . . . . "[8]

Generally, the FCBOE accepts the claim of independence at face value.  (Damchroder Dep. at 41, 120-121).  If however, there is a protest pursuant to O.R.C. § 3513.262, the BOE will look further.  (*Id.*)  The statute does not "lack any definitive standards" or "afford[] unbridled discretion" as Plaintiffs suggest.  Instead, the Court finds that O.R.C. § 3513.257 has sufficiently marked boundaries such that the BOE is able to fairly apply the statute in accordance with the will of Congress. *See United States v. Petrillo*, 332 U.S. 1, 7 (1947) (A statute must "mark boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of

---

[8] If, however, the individual represents himself as unaffiliated for the purpose of persuading a person to sign his nominating petition, that person must be unaffiliated from the date of the representation. *See* O.R.C. § 3599.14.  O.R.C. § 3599.14 provides in part:

 [n]o person shall knowingly, directly or indirectly, do any of the following in connection with any declaration of candidacy, . . . nominating petition . . . or other petition presented to or filed with the secretary of state, a board or [sic] elections, or any other public office for the purpose of becoming a candidate for any elective office, including the office of a political party . . . (1) Misrepresent the contents, purpose, or effect of the petition or declaration for the purpose of persuading a person to sign or refrain from signing the petition or declaration; . . . (2) Make a false certification or statement concerning the petition or declaration . . . .

Congress.").  The BOE has limited discretion to make a fact-specific determination as to whether or not the individual desiring to be an independent candidate is as he claims, that is, not affiliated with a political party.[9]  For these reasons, the Court rejects Plaintiffs' final two arguments.

In conclusion, based upon the foregoing, the Court finds that the O.R.C. § 3513.257 satisfies the standards set forth in *Grayned* and *Hynes*, and consequently, is not void for vagueness.

### 2.      Overbreadth

Plaintiffs next argue that, even if the O.R.C. § 3513.257 survives the vagueness challenge, the "severe burden" imposed by the statute on an individual's First and Fourteenth Amendment rights renders O.R.C. § 3513.257 unconstitutional.  Pls' Mot. at p. 39-40.  In making this argument, Plaintiffs ignore precedent.

Plaintiffs correctly point out that election laws, such as O.R.C. § 3513.257, place burdens on the rights of individuals to associate for the advancement of political beliefs and the rights of qualified voters to cast their votes effectively, both ranking among our most precious freedoms. *Libertarian Party of Ohio v. Blackwell*, 2006 Fed.App. 0342P (6th Cir. 2006); *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005), *citing Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). Conspicuously absent from Plaintiffs' Motion for Preliminary and Permanent Injunction, however,

---

[9] For example, in the instant case, the validity of Morrison's independent candidacy was challenged.  At the evidentiary hearing, the FCBOE considered uncontroverted evidence that Morrison appeared on the May 2, 2006 ballot as a candidate for the Republican Party State and Local Central Committees.  Significantly, his appearance on the ballot came *after* the deadline for filing statement of candidacy and nominating petitions.  Morrison, in seeking the nomination for the governing bodies of the Republican Party, was attesting, under penalty of election falsification, that he was a Republican.  Additionally, Morrison voted in the primary (again, *after* O.R.C. § 3513.257's deadline) reaffirming his affiliation with the Republican party.  Based upon these and other facts, the FCBOE determined that Morrison was affiliated with the Republican party.

is any recognition, let alone any discussion, of a state's "extensive authority to regulate elections which tend[] to restrict those rights to some degree." *Blackwell*, 430 F.3d at 372, *citing Williams*, 393 U.S. at 30-31; *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Accord, Libertarian Party of Ohio*, 2006 Fed.App. 0342P at *4 ("This does not mean, however, that all state restrictions on political parties and elections violate the Constitution . . .  The Supreme Court has clearly stated that states may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election and campaign-related disorder.  Thus, voting regulations are not automatically subjected to heightened scrutiny.") (Internal quotations and citations omitted).  In the instant case, there exists a conflict between the constitutional rights of Plaintiffs and the authority of a state to regulate its elections.

The Sixth Circuit, in evaluating these types of cases, follows the analytical framework set forth by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and its progeny. *See example, Lawrence*, 430 F.3d 368 (applying *Anderson* and progeny to hold that O.R.C. § 3513.257's early filing deadline for independents constitutional, where requirement did not impose a severe burden on independent candidates' or voters' constitutional rights so as to warrant strict scrutiny); *see also, Libertarian Party of Ohio*, 2006 Fed.App. 0342P (applying *Anderson* and progeny to invalidate regulations governing Ohio's system for registering new political parties where said regulations imposed a severe burden on constitutional rights, but failed to advance a compelling state interest and were not narrowly tailored).  The Sixth Circuit has summarized the *Anderson* (and progeny) analytical framework as follows:

> There is no bright-line test to determine when a state oversteps it bounds and impermissibly infringes on the constitutional rights of voters . . . .  Courts must undertake the difficult task of considering and weighing the asserted injury to fundamental constitutional rights, the precise interest of the state in the regulation at

19

issue, and the extent to which it is necessary to burden important rights in order to achieve any important state interests . . . . When a state promulgates a regulation which imposes a severe burden on individuals' rights, that regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. However, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

*Lawrence*, 430 F.3d at 372-73 (internal quotations and citations omitted); *accord, Libertarian Party of Ohio*, 2006 Fed.App. 0342P at *4-5.

This Court's first task under this analytical framework is to determine whether or not O.R.C. § 3513.257's requirements – that an individual desiring to become an independent candidate, must be free of political affiliations by "no later than four p.m. of the day before the day of the primary election . . ." – imposes a "severe burden on individuals' rights," or whether the restrictions are "reasonable" and "nondiscriminatory."[10]

*Lawrence*, 430 F.3d 368, is instructive.   In *Lawrence*, the plaintiffs challenged O.R.C. § 3513.257's early filing deadline for independent candidates.  Like Plaintiffs in the instant case, the *Lawrence* plaintiffs argued the statute imposed a severe burden on their First and Fourteenth Amendment rights. *Id*. at 373.  In support of their argument, the *Lawrence* plaintiffs offered expert testimony that "early filing deadlines place significant burdens on independent candidates because independents often do not decide to run until after the deadline has passed." *Id.*  The *Lawrence* Court acknowledged the veracity of this statement, but responded, "the Supreme Court has held that little

_____

[10] As the Court noted earlier, Plaintiffs' do not challenge Ohio's authority to impose a filing deadline for independent candidates that is prior to the primary election.  Likewise, Plaintiffs do not challenge the nominating petition signature requirements contained in O.R.C. § 3515.257. Accordingly, the Court's analysis focuses only on whether the requirement that an individual desiring to become an independent candidate, must be free of political affiliations by "no later than four p.m. of the day before the day of the primary election . . ." is unconstitutionally burdensome.

weight is given to 'the interest the candidate and his supporters may have in making a late rather than early decision to seek independent status.'" *Id., citing Storer*, 415 U.S. at 736. The *Lawrence* Court explained that there is a "vital distinction" between a filing deadlines well in advance of the primary elections and those falling closer to the dates of those elections:

> The early deadline discussed in *Anderson* imposed such a significant burden because it put independent candidates at a disadvantage vis-a-vis the major parties' nominees who where not named until nearly five months later . . . . [In the instant case], all candidates seeking a place on the ballot in November must engage in substantial campaign work before the early primary in order to obtain a space on the ballot. Those running in the primary must file sixty days before the primary, campaign, and win their party's primary while independent candidates must spend the time before the primary acquiring the requisite number of signatures and then file their petition by the day before the primary. All candidates are burdened by the fact that Ohio chooses to conduct its primary at an early date, but there is no particular group which feels the additional burden of being placed at a disadvantage with respect to the rest of the field. The district court correctly concluded that this difference between this case and the *Anderson* case is significant. Here the burden imposed by Ohio's early deadline is nondiscriminatory.

*Id.* at 373.[11] The *Lawrence* Court concluded, "[w]hen considering Ohio's election scheme as a whole, the early filing deadline is both reasonable and nondiscriminatory and therefore, within Ohio's constitutional authority to regulate elections as long as it advances an important state regulatory interest." *Id.* at 374.

The burdens imposed by O.R.C. § 3513.257's early filing deadline for independent candidates, and the statute's requirement that an independent candidate be free of political affiliations by "no later than four p.m. of the day before the day of the primary election . . .", are one in the same. *(See* discussion on vagueness challenge, *supra).* Indeed, to separate them, renders the early filing

---

[11] The Sixth Circuit again acknowledged this distinction in *Libertarian Party of Ohio*, 2006 Fed. App. 0342P at *9: "[i]n so ruling, we follow the great weight of the authority that has distinguished between filing deadlines well in advance of the primary and general elections and deadlines falling closer to the dates of those elections."

requirement meaningless.  Separation would cause the level playing field acknowledged by the *Lawrence* Court to be tilted in favor of independent candidates.  Further, and even more significantly, if a candidate could remain politically affiliated, or change their political affiliation after the filing deadline, the interests the legislature sought to protect (expressly set forth in the final paragraph of O.R.C. § 3513.257), would be undermined. *Id.*  Thus, the finding by the *Lawrence* court – that "the early filing deadline is both reasonable and nondiscriminatory as long as it advances an important state regulatory interest" – applies in the instant case.

The Court's next task under the *Anderson* and progeny analytical framework is to determine whether or not O.R.C. § 3513.257's requirements advance an important state regulatory interest. *Lawrence*, 430 F.3d at 374-75.  The *Lawrence* Court found that "Ohio has important state regulatory interests which are sufficient to justify the reasonable and nondiscriminatory burdens imposed by its early filing deadline." *Id.* at 375.  Among the important state regulatory interests the *Lawrence* Court recognized were "a state's strong interest in maintaining the stability of its political system" and "Ohio's important state interest of equal treatment of candidates." *Id.*  Likewise, the Supreme Court, in *Storer*, upheld the constitutionality of an even more onerous disaffiliation requirement finding that the requirement reflected compelling state interests.[12]  This Court agrees with the *Lawrence* and

---

[12] The *Storer* Court's application of strict scrutiny is not inconsistent with *Lawrence*.  In *Storer*, the challenged California Election Statute, in addition to other requirements, forbade ballot position to an individual desiring to become an independent candidate if that individual voted in the immediately preceding primary or if he had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election. 415 U.S. at 726.  As the Sixth Circuit has recognized, courts distinguish "between filing deadlines well in advance of the primary and general elections and deadlines falling closer to the dates of those elections." *Libertarian Party of Ohio*, 2006 Fed. App. 0342P at *9. Where, as in Storer, the "deadlines [are] far in advance of the primary election imposing a severe burden on the rights of political parties, candidates and voters," strict scrutiny is appropriate. *Id., citing Lawrence*, 430 F.3d at 375.

*Storer* Courts, and accordingly, finds that O.R.C. § 3513.257's requirements advance important, and even compelling state regulatory interests.

In conclusion, applying the analytical framework set forth in <u>Anderson</u> and progeny, the Court finds that the reasonable and nondiscriminatory burdens imposed by O.R.C. § 3513.257 on Plaintiffs' First and Fourteenth Amendment rights are justified by Ohio's important, and even compelling, regulatory interests.

### 3. Discriminatory Application

Lastly, Plaintiffs argue that O.R.C. § 3513.257 was applied against Morrison in a discriminatory manner. Pls' Mot. at p. 47. The Court finds Plaintiffs' argument disingenuous.

It is undisputed that Morrison appeared on the May 2, 2006 ballot as a candidate for the State and Local Republican Central Committees. His appearance on the ballot came *after* the deadline for filing statement of candidacy and nominating petitions. Morrison, in seeking the nomination for the governing bodies of the Republican Party, was attesting, under penalty of election falsification, that he was a Republican. Further, Morrison voted in the primary election (again, *after* O.R.C. § 3513.257's deadline) reaffirming his affiliation with the Republican party. Thus, the Court finds that the FCBOE's determination that Morrison was affiliated with the Republican party in violation with O.R.C. § 3513.257 was not arbitrary or discriminatory, but rather based upon these and other undisputed facts.

Plaintiffs, however, ignore these facts, and in support of their arguments, instead seek to rely on the FCBOE's certification of Robert Fitrakis and his running mate as independent candidates for the 2006 Governor and Lieutenant Governor race, notwithstanding the fact that Fitrakis, like Morrison, had voted in the Republican Primary. Pls' Mot. at 47-48. Plaintiffs' reliance is misplaced.

23

As a general matter,

> [t]here is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere; and prosecutors have broad discretion in deciding who to prosecute.

*Daubenmire, et al. v. City of Columbus*, 2006 U.S. Dist. LEXIS 7661 at *27, (S.D. Ohio 2006, Marbley, J.) *quoting, Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1056 (6th Cir. 1996). Regardless, review of the record reveals that the FCBOE did not treat Fitrakis more favorably, or even differently, than Morrison. Fitrakis' petition, like Morrison's, contained the required number of valid signatures and appeared otherwise valid on its face. It is the FCBOE's stated policy and practice of relying on the honesty of the candidates that they are qualified to be a candidate or will qualify for the office they seek. Absent a protest pursuant to O.R.C. § 3513.262, the FCBOE's examination does not continue beyond the FCBOE's facial review of the petition for validity. Fitrakis' petition, however, was not challenged; Morrison's was. This, not the discriminatory application of O.R.C. § 3513.257, is the reason for the difference.

Plaintiffs advance no further arguments in support of their claims that O.R.C. § 3513.257 is unconstitutional. Having rejected each of Plaintiffs' arguments, the Court concludes that Plaintiffs are not likely to succeed on the merits of their claims.

## B.    Irreparable harm

Given that Plaintiffs have not substantially demonstrated a constitutional violation, the Court is unable to conclude that irreparable harm has been established for purposes of issuing a preliminary and/or permanent injunction.

**C.      Harm to others**

While the protection of constitutional rights is always a public interest, there has been no violation of constitutional rights here.  Further, if Morrison is permitted to run for Representative from the 15th House District, there will be harm to the general public as the integrity of the ballot will be undermined.

**D.      Public interest**

The Court finds that in this case the public interest is best served by deferring to Defendants' efforts to ensure the integrity of the election process.

Examining the four preliminary and permanent injunction factors together, the Court concludes that the issuance of a preliminary and/or permanent injunction is not warranted in this instance.


## IV.      CONCLUSION

Based on the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for a Preliminary and Permanent Injunction.  Final judgment shall be rendered in favor of Defendants and against Plaintiffs.


The Clerk shall remove this case from the Court's pending motions and cases.

**IT IS SO ORDERED.**

**   /s/ George C. Smith           **
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

25